1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10
| | |
|---|---|
| MARINA LONG, individually and on behalf of other members in the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, | CASE NO. 15cv2836-WQH-RBB |
| | ORDER |
| Plaintiff, | |
| v. | |
| DESTINATION MATERNITY CORPORATION, an unknown business entity; and DOES 1 THROUGH 100, inclusive, | |
| Defendant. | |

18  HAYES, Judge:

19          The matters before the Court are the Motion to Strike Portions of Defendant's

20  Answer to Plaintiff's Complaint (ECF No. 6) and the Motion to Remand (ECF No. 7)

21  filed by Plaintiff Marina Long.

22  **I. Background**

23          On December 16, 2015, Plaintiff initiated this action by filing a Complaint in San

24  Diego County Superior Court, Case No. 37-2015-00032887-CU-OE-CTL.    The

25  Complaint alleges the following causes of action: (1) violation of California Labor Code

26  sections 510 and 1198 (unpaid overtime wages); (2) violation of California Labor Code

27  sections 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California

28  Labor Code section 226.7 (unpaid rest period premiums); (4) violation of California

Labor Code sections 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code sections 201 and 202 (wages not timely paid upon termination); (6) violation of California Labor Code section 204 (wages not timely paid during employment); (7) violation of California Labor Code section 226(a) (non-compliant wage statements); (8) violation of California Labor Code section 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code sections 2800 and 2802 (unreimbursed business expenses); (10) violation of California Business and Professions Code section 17200 *et seq.*; and (11) violation of California Labor Code section 2698, *et seq.* (California Labor Code Private Attorney General Act of 2004 ("PAGA")).  (ECF No. 1-2).

On December 16, 2015, Defendant Destination Maternity Corporation removed the action to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. (ECF No. 1). The notice of removal asserts that "[t]his Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453 . . . ." *Id.* at 2.  The notice of removal asserts that

> Removal under CAFA diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (i) diversity of citizenship exists between Plaintiff and Defendant; (ii) the number of proposed class members is 100 or greater; and (iii) the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), 1453.

*Id.* at 3.  Accompanying the notice of removal, Defendant attaches a declaration from Katina Montieth (the "Montieth Declaration"), the Director of HRIS & Compensation for Defendant Destination Maternity Corporation, indicating that Defendant Destination Maternity is incorporated in Delaware and operates its principal place of business in Moorestown, New Jersey.  (ECF No. 1-4).  In her declaration, Montieth states that based on her review and analysis of Defendant Destination Maternity's employee data and business records, during the alleged class period from September 29, 2011 through October 1, 2015, Defendant Destination Maternity "employed approximately 2,270 hourly-paid or non-exempt employees.  Approximately 1,371 of these individuals have separated from their employment with Defendant since September 29, 2012." *Id.* ¶ 6.

Montieth states in her declaration that

> From September 29, 2011 through October 1, 2015, these 2,270 employees in the relevant hourly-paid or non-exempt positions were employed a total of approximately 97,914 work weeks. The weighted average hourly wage for the 2,270 putative class members during this period was approximately $12.73. The weighted average hourly wage for the 1,371 individuals who have separated from their employment with Defendant since September 29, 2012 was $11.83.

*Id.* ¶ 7. Montieth states in her declaration that according to Defendant Destination Maternity's records, Plaintiff "worked 5.33 hours per day on average. However, California managers were regularly scheduled to work eight (8) hour days." *Id.* ¶ 8.

On December 16, 2015, Defendant Destination Maternity Corporation filed an answer to Plaintiff's complaint denying generally all of the allegations of the complaint and asserting twenty-two defenses. (ECF No. 2).

On December 30, 2015, Plaintiff filed a motion to strike portions of Defendant's answer to the Complaint. (ECF No. 6). On January 4, 2016, Plaintiff filed a motion to remand to state court. (ECF No. 7). On January 15, 2016, Defendant filed an opposition to the motion to strike (ECF No. 9). On January 15, 2016, Defendant filed an opposition to the motion to remand (ECF No. 10) and an amended opposition to the motion to remand (ECF No. 12). On January 25, 2016, Plaintiff filed a reply to the opposition to the motion to remand (ECF No. 13) and a reply to the opposition to the motion to strike (ECF No. 14).

## II.  Allegations of the Complaint

"Defendants hired Plaintiff and the other class members and classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked, missed meal periods and/or rest breaks." (ECF No. 1-2 ¶ 25). "Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants." *Id.* ¶ 30.

> Defendant engaged in a uniform policy/practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This uniform policy/practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned, missed meal periods and rest breaks in violation of California law.

*Id.* ¶ 31. "Defendants failed to provide Plaintiff and the other class members the required rest and meal periods during the relevant time period as required under the Industrial Welfare Commission Wage Orders . . . ." *Id.* ¶ 33.

> Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay when a meal period was missed, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay when a meal period was missed.

> Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay when a rest period was missed, and they did not receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class members' regular rate of pay when a rest period was missed.

*Id.* ¶¶ 34-35. "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked." *Id.* ¶ 36.

> Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation.

*Id.* ¶ 37. "Plaintiff and the other class members did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204." *Id.* ¶ 38. "Plaintiff and the other class members . . . did not receive complete and accurate wage statements from Defendants. The deficiencies included, inter alia, the failure to include the total number of hours worked by Plaintiff and the other class members." *Id.* ¶ 39. Defendants "did not keep complete and accurate payroll records." *Id.* ¶ 40.

> At all material times . . . Defendants failed to pay overtime wages to Plaintiff and the other class members for all hours worked.  Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation.

*Id.* ¶ 43. "At all material times . . . Defendants failed to provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members." *Id.* ¶ 44.

"At all material times . . . Defendants failed to pay Plaintiff and other class members at least minimum wages for all hours worked." *Id.* ¶ 45. "Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." *Id.* ¶ 85. "Plaintiff and the other class members are entitled to recover a penalty of $100.00 for initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages." *Id.* ¶ 86.

"At all material times . . . Defendants failed to pay Plaintiff and other class members all wages owed to them upon discharge or resignation. *Id.* ¶ 46. "Plaintiff and other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.* ¶ 93.

"At all material times . . . Defendants failed to pay Plaintiff and other class members all wages within any time permissible under California law . . . ." *Id.* ¶ 47. "At all material times . . . Defendants failed to provide complete or accurate wage statements to Plaintiff and other class members." *Id.* ¶ 48. "At all material times . . . Defendants   failed to keep complete or accurate payroll records for Plaintiff and the other class members." *Id.* ¶ 49. "At all material times . . . Defendants failed to reimburse Plaintiff and other class members for necessary business-related expenses and costs." *Id.* ¶ 50.

The Complaint defines the proposed class as "All current and formerly hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Id.* ¶ 13. The Complaint does not specify the amount of damages sought by the Plaintiff and putative class members but states that "[t]he 'amount in controversy' for the named Plaintiff, including but not limited to claims for compensatory damages, restitution, penalties, wages, premium pay, and pro rate share

of attorneys' fees, is less than seventy-five thousand dollars ($75,000)." *Id.* ¶ 1.

### III. Motion to Remand

Plaintiff contends that Defendant failed to provide competent evidence of the number of putative class members, the number of relevant work weeks, or the average rate of pay sufficient to prove that the amount in controversy exceeds $5 million.

Defendant contends that the notice of removal satisfies the pleading requirement of a short and plain statement of the grounds for removal. Defendant contends that federal court jurisdiction is proper because it has established by a preponderance of the evidence that the amount in controversy exceeds $5 million. Defendant contends that Plaintiff did not provide any evidence to support her motion to remand.

"To remove a case from state court to federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (quoting 28 U.S.C. § 1446(a)). "When removal is based on diversity of citizenship, an amount-in-controversy requirement must be met." *Id.* The Class Action Fairness Act of 2005 ("CAFA") "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Id.* (quoting § 1332(d)(2), (5)(B)). "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Id.* (quoting 28 U.S.C. § 1446(c)(2)). "When plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (quoting 28 U.S.C. § 1446(c)(2)(A)).

"If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval ... is proper on the basis of [an] amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 553 (quoting 28 U.S.C. § 1446(c)(2)(B)). "[W]hen a defendant's assertion of the amount in controversy

1   is challenged . . . both sides submit proof and the court decides, by a preponderance of

2   the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

3   at 554.

4       "[N]o antiremoval presumption attends cases invoking CAFA . . . ." *Id.* (citing

5   S. Rep. No. 109–14, p. 43 (2005) (CAFA's "provisions should be read broadly, with

6   a strong preference that interstate class actions should be heard in a federal court if

7   properly removed by any defendant.")). "Congress intended CAFA to be interpreted

8   expansively." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir.

9   2015).

10      "In sum, as specified in § 1446(a), a defendant's notice of removal need include

11  only a plausible allegation that the amount in controversy exceeds the jurisdictional

12  threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when

13  the plaintiff contests, or the court questions, the defendant's allegation." *Id.*  In

14  determining whether the amount-in-controversy requirement is satisfied, the appropriate

15  procedures is as follows: "The parties may submit evidence outside the complaint,

16  including affidavits or declarations, or other 'summary-judgment-type evidence relevant

17  to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197

18  (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

19

20          [W]hen the defendant's assertion of the amount in controversy is

21          challenged by plaintiffs in a motion to remand, the Supreme Court has said
    that both sides submit proof and the court then decides where the

22          preponderance lies.  Under this system, CAFA's requirements are to be
    tested by consideration of real evidence and the reality of what is at stake

23          in the litigation, using reasonable assumptions underlying the defendant's
    theory of damages exposure.

24  *Id.* at 1198 (citations omitted).  "[A] damages assessment may require a chain of

25  reasoning that includes assumptions.  When that is so, those assumptions cannot be

26  pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199.

27      In this case, Defendant removed the case to this Court, invoking federal

28  jurisdiction under CAFA.  The parties do not contest CAFA's jurisdictional

requirements of minimum diversity and class numerosity; the sole issue before the Court is whether CAFA's requirement that the amount in controversy exceed $5 million is met here. *See Ibarra*, 775 F.3d at 1196-97. The amount in controversy is not facially apparent from the Complaint. Because the Complaint did not allege a specific amount in controversy, the notice of removal filed by Defendant asserted that the amount in controversy exceeds $5 million and provided a declaration to support its assumptions regarding damage exposure. *See id.* at 1197.

### A. Sufficiency of the Evidence

Plaintiff contends that the Montieth Declaration submitted by Defendant does not describe the material reviewed by Montieth, does not describe the database of employee records, and does not describe the report generated from the database. Plaintiff contends that Montieth does not explain how the custom reporting function of Defendant's database operates and how it can be used to retrieve complete and accurate data. Plaintiff contends that Defendant failed to provide summary-judgment-type evidence necessary to support the figures relied upon in determining the amount in controversy. Plaintiff contends that Defendant did not provide its calculations for the "weighted average hourly wage" of putative class members. (ECF No. 7-1 at 9). Plaintiff contends that Defendant failed to provide actual payroll records to support its calculations.

Defendant contends that the Montieth Declaration demonstrates that Montieth had personal knowledge of the facts set forth in the declaration. Defendant contends that Montieth is familiar with Defendant's maintenance of personnel records and payment information and that Montieth reviewed a report identifying non-exempt employees who worked for Defendant during the alleged class period. Defendant contends that Montieth explained the software systems she accessed to retrieve the data provided in her declaration and explained that she used the custom reporting function of those systems to retrieve information kept in the ordinary course of business. Defendant alleges that the Montieth Declaration attests to the minimum number of

individuals in the putative class and the minimum number of the sub-class individuals who could recover damages based on the allegations of the complaint. Defendant alleges that Plaintiff cites no legal authority stating that Defendant should have produced payroll records for over 2,000 individuals to support its amount in controversy calculations.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer*, 116 F.3d at 377); *see also Branch v. PM Realty Group, L.P.*, No. 16-55200, -- Fed.Appx. ----, 2016 WL 1298017, at * (9th Cir. Apr. 4, 2016) (finding a declaration submitted by the defendant "attesting to the number of nonexempt hourly employees, the number of weeks they worked, and their average hourly rate of pay" and reasonable assumptions based on those numbers sufficient to demonstrate that the amount in controversy exceeded $ 5 million).

While the burden of proof is on Defendant to establish by a preponderance of the evidence whether the amount in controversy requirement has been satisfied, both parties had the opportunity to submit proof regarding the amount in controversy. *See Ibarra,* 775 F.3d at 1199. Plaintiff submits no evidence in support of the motion to remand. Defendant offers evidence regarding the number of class members Defendant employed, the average number of weeks worked during the class period, and class members' average base rate of pay.

Defendant submits the declaration of Katina Montieth, the Director of HRIS (Human Resource Information System) & Compensation for Defendant Destination Maternity Corporation. (ECF No. 12-1). The Montieth Declaration provides information from employee data and business records. In her declaration, Montieth states,

> In my position as the Director of HRIS & Compensation, I utilize ADP to access Destination Maternity's Power Source database. I utilized the custom reporting functions of those systems to retrieve the information discussed [in the declaration]. Thus, I make this declaration based on

information I accessed from records kept in the ordinary course of Destination Maternity's business.

Destination Maternity maintains certain information about its current and former employees in its Power Source database. The database includes information about an employee's job title(s), dates of employment, wages, and work location. I have reviewed a report generated from information found in this database of current and former employees who have held the positions as hourly-paid, non-exempt employees for Destination Maternity in California.

*Id.* ¶¶ 5-6. The information presented by Montieth is the type of data that would be collected and kept by a company in the ordinary course of business. Montieth states that reviewing this type of data is within the scope of her ordinary employment duties as the Director of HRIS & Compensation. *See Arreola v. Finish Line*, No. 14-CV-03339, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (crediting data presented in a supplemental declaration from the defendant's human resources department and relevant time and payroll records); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1148 (C.D. Cal. 2010) (crediting data presented from research of employee records and the employer's computer databases); *Oda*, 2015 WL 93335, at *3 (finding that a declaration of Senior Human Resource Manager asserting familiarity with the defendant's relevant payroll and personnel records and testifying to the number of wage statements issued, number of employees, and number of weeks worked by those employees during the relevant time period was sufficient to establish the amount in controversy).

The Court considers the Montieth Declaration in determining whether Defendant has met its burden to establish jurisdiction. Defendant is not required to produce business records "setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged" to meet its burden regarding the amount in controversy. *See Tajonar v. Echosphere, L.C.C.*, No. 14cv2732, 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015) ("A defendant 'is not required to comb through its records to identify and calculate the exact frequency of violations'; rather it merely must prove the amount in controversy by a preponderance of the evidence.") (quoting *Oda v. Gucci Am.*, Nos. 2:14–cv–7468, 2:14–cv–7469, 2015 WL 93335, at *5 (C.D.

Cal. Jan. 7, 2015)); *Unutoa*, No. 2:14–cv–09809, 2015 WL 898512, at *3 (C.D. Cal. Mar. 13, 2015) ("a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation"); *Muniz v. Pilot Travel Centers LLC*, No. CIV S-07-0325 FCD EFB, 2007 WL 1302504, at *4-5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this premature (pre-certification) stage of the litigation . . . . Rather, it is defendant's burden to produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00 . . . .") (citations omitted).

## B. Failure to Pay Overtime

The Complaint alleges that "Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." (ECF No. 1-2 ¶ 58). Plaintiff's prayer for relief alleges that Defendant violated California Labor Code "by willfully failing to pay all overtime wages due to Plaintiff and the other class members." *Id.* at 33.

Plaintiff contends that Defendant's overtime calculations, based on the assumption that putative class members worked one hour of overtime per week without due compensation, are speculative. Plaintiff contends that Defendant does not cite evidence such as work schedules, time cards, or complaints from an employee hotline to establish the propriety of its overtime calculation. Plaintiff contends that allegations of Defendant's "uniform" behavior do not constitute allegations that violations occurred on every possible occasion. (ECF No. 13 at 5).

Defendant contends that its overtime calculations are supported by Plaintiff's allegations that Defendant had a uniform policy and practice of failing to pay putative class members overtime wages and allegations that Defendant required Plaintiff and other class members to work more than forty hours a week without overtime compensation. Defendant contends that Plaintiff does not argue that she is seeking less overtime than calculated by Defendant and does not explain why Defendant's estimates

are incorrect given the allegations of the Complaint.

The declaration submitted in support of the notice of removal asserts that there are 2,270 class members who were employed by Defendant during the class period. In her declaration, Montieth asserts that during the class period, from September 29, 2011 through October 1, 2015, the 2,270 putative class members were employed a total of approximately 97,914 work weeks. Montieth Decl. ¶ 7. In the declaration, Montieth asserts that the average hourly wage for hourly-paid and non-exempt positions for the putative class members during the class period was approximately $12.73. *Id.* Based on the average hourly wage of $12.73, Defendant calculates that the average hourly overtime rate is $19.10. Defendant estimates that even if Plaintiff claims one hour of unpaid overtime per putative class member per week, the amount in controversy for Plaintiff's claim that Defendant failed to pay overtime places at least $1,870,157 in controversy.

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "Whether the assumption underlying a defendant's theory of damages are reasonable is a question of law . . . ." *Branch*, 2016 WL 1298017, at * 2.

In this case, Defendant does not assume that a violation occurred on every possible occasion in calculating the amount in controversy, rather, Defendant estimates one hour of unpaid overtime per putative class member per week. Defendant's estimates are reasonable based on the allegations that Defendant engaged in a uniform policy of failing to pay overtime wages and that Defendant "willfully fail[ed] to pay all overtime wages due to Plaintiff and the other class members." *See* ECF No. 1-2 at 33; *see also Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012 ) ("Given the allegations of a 'uniform policy and scheme' and that violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by

Plaintiff."); *Arreola*, 2014 WL 6982571, at *4 ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation per week.").

### C. Failure to Provide Meal and Rest Periods

The Complaint alleges that "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods" and failed to compensate them "the full meal period premium for work performed during those periods." (ECF No. 1-2 ¶ 69). The Complaint alleges that "Defendants willfully required Plaintiff and the other class members to work during rest periods" and failed to compensate them "the full rest period premium for work performed during rest periods." *Id.* ¶ 78. Plaintiff's prayer for relief alleges that Defendant violated California Labor Law by "willfully failing to provide all meal periods" and "willfully failing to provide all rest periods." *Id.* at 33-34.

Plaintiff contends that Defendant's meal and rest break premium calculations are speculative. Plaintiff contends that Defendant does not provide time cards, pay stubs, wage statements, or work schedules to support its estimation of meal and rest violation rates. Plaintiff contends that allegations of Defendant's "uniform" behavior do not constitute allegations that violations occurred on every possible occasion. (ECF No. 13 at 5).

Defendant contends that Plaintiff's allegations that Defendant had a uniform policy and practice of failing to pay putative class members makes Defendant's assumption reasonable that one meal period *or* rest period violation occurred per employee per week during the alleged class period.

The Montieth Declaration asserts that Defendant employed 2,270 putative class members for approximately 97,914 work weeks in hourly-paid or non-exempt positions with an average hourly wage of $12.73. Montieth Decl. ¶ 7. Defendant estimates that,

in light of Plaintiff's allegations that Defendant required class members to work through their meal and rest breaks, a claim that one meal period *or* one rest period violation occurred per employee per week places at least $1,246,445 in controversy.

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross*, 775 F.3d at 1202. "Whether the assumption underlying a defendant's theory of damages are reasonable is a question of law . . . ." *Branch*, 2016 WL 1298017, at * 2.

Estimating one violation of either a meal period or rest period per employee per week, Defendant has submitted evidence to show that the class members worked approximately 97,914 weeks during the class period and the average penalty would be $12.73 per day (the average wage for one hour of work), totaling $1,246,445 for the class period. Montieth Decl. ¶ 8.

Because Plaintiff does not include fact-specific allegations regarding the circumstances of the alleged missed meal and rest periods, it is reasonable for Defendant to estimate damages sought based on one meal period or rest period violation per employee per week. *See Muniz*, 2007 WL 1302504, at *4 ("[P]laintiff includes no fact-specific allegations that would result in a punitive class or violation rate that is discernibly smaller than 100% . . . . Plaintiff is the master of her claims, and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought."); *Jasso*, 2012 WL 699465, at *5 ("Given the allegations of a 'uniform policy and scheme' and that violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff."); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK, 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("Plaintiff's FAC does not contain any allegations that suggest a 100% violation rate is an impermissible assumption . . . . It is not unreasonable to assume that when a company has unlawful policies and they are

uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").  Defendant's estimates are reasonable based on the allegations that Defendant failed to provide "all meal periods" and "all rest periods." *See* ECF No. 1-2 at 33-34; *see also Branch*, 2016 WL 1298017, at * 2 ("The declarations attached to [plaintiff's] motion to certify class indicate relevant employees suffered extensive meal break and almost universal rest break violation rates.  Given this evidence, [defendant's] extrapolated violation rate of two noncompliant meal breaks per week and two noncompliant rest breaks per week is, at a minimum, reasonable.");

### D.  Waiting Time Penalties

The Complaint alleges that Defendant failed to pay Plaintiff and the other class members "wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ," and that Plaintiff and class members are entitled to recover "the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum . . . ."  (ECF No. 1-2 ¶¶ 90, 93).  Under Cal. Labor Code § 203(a), "[i]f an employer wilfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203.

Plaintiff contends that waiting time penalties are inflated.  Plaintiff contends that Defendant does not provide competent evidence to show that the putative class members may be entitled to maximum waiting time penalties.  Plaintiff contends that assuming maximum waiting time penalties is inappropriate.

Defendant contends that based on the allegations of the Complaint, every former employee who left employment with Defendant during the alleged class period suffered at least one underpayment of wages and would be entitled to waiting time penalties.  Defendant contends that the maximum thirty-day waiting time penalty can be claimed by each former employee in the putative class because Plaintiff alleges underpayment

of final wages that have still not been paid.

The Montieth Declaration states that approximately 1,371 of the putative class members have left their employment with Defendant since September 29, 2012. Defendants calculate maximum waiting time penalties based on Plaintiff's allegation that class members have still not been paid money owed to them at the end of their employment, reasoning that each of the class members who have left Defendant's employ would seek the maximum thirty-day waiting time penalty.  Using an average shift length of 5.33 hours[1], employees paid at the average salary of $11.83 an hour would seek $63.05 a day, totaling $1,891.61 for the maximum thirty-day penalty. Defendant contends that Plaintiff's claim for waiting time penalties places at issue at least $2,593,406.

In the motion to remand, Plaintiff relies on *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) to support the contention that assuming maximum waiting time penalties is inappropriate.  In *Lowdermilk*, the Court found that a declaration from a human resource employee was insufficient to prove that the CAFA jurisdictional amount was met "to a legal certainty." 479 F.3d at 999, 1001.  In this case, Defendant's burden is to prove the amount in controversy by a preponderance of the evidence, not to a legal certainty.  *See Dart*, 135 S.Ct. at 553; *see also Ibarra*, 775 F.3d at 1196 (recognizing *Lowdermilk* overruled).  Plaintiff also relies on *Garibay v. Archstone Cmtys*, 539 Fed. Appx. 763 (9th Cir. 2013).  In *Garibay*, the Court found that the defendant provided no basis to assume that each putative class member would seek maximum waiting time penalties. *Id.* at 764.  Unlike *Garibay*, in this case Defendant's assumptions are not inconsistent with Plaintiff's allegations.  Because the Court has found that it is reasonable to assume that all putative class members have not been paid all of their overtime and meal and rest break wages, it is reasonable to assume that all class members would have had those unpaid wages withheld after their employment

---

[1] Defendant alleges that an average shift length is eight hours.  However, Defendants calculate potential waiting time penalties based on Plaintiff's average shift length, which Defendants allege was 5.33 hours.

ended and still not paid up to the maximum thirty-day period. *See Mejia*, 2015 WL 2452755, at \*6. Defendant's estimates are reasonable based on the allegations that Defendant failed to pay Plaintiff and class members their wages after leaving Defendant's employ and that Defendant has still not paid Plaintiff and class members all wages they were entitled to.

**E. Attorneys' Fees and Other Damages**

Plaintiff contends that Defendant's calculation of attorneys' fees is speculative because it relies on Defendant's unsubstantiated amount in controversy calculations. Plaintiff contends that courts are split as to whether future attorneys' fees which have not yet been incurred at the time of removal may be considered in the amount in controversy. Plaintiff contends that Defendant's use of a 25% benchmark to calculate attorneys' fees is too conjectural.

Defendant contends that the substantial weight of authority supports using a reasonable estimate of future attorneys' fees to calculate the amount in controversy. Defendant contends that, in calculating the total amount in controversy, it followed the majority view by adding a fee recovery of 25% of the estimated damages at issue.

Attorneys' fees may be properly included in determining the amount in controversy when an underlying statute authorizes an award of attorney's fees. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Plaintiff seeks to recover attorneys' fees pursuant to section 218.5 of the California Labor Code, which provides that "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." *See* Cal. Labor Code § 218.5. "25% recovery is the benchmark level for reasonable attorney's fees in class action cases . . . and . . . such fees are properly included in calculations of the amount in controversy." *Garibay*, 539 Fed. Appx. at 764 (citation and internal quotation omitted).

The parties identify a split among district courts regarding the amount of attorneys' fees properly included within the amount in controversy. Some courts have held that only the fees incurred up to the date of removal should be considered for calculating the amount in controversy. *See Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at * 4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal."); *Conrad Associates v. Hartford Acc. & Indem. Co.*, 944 F. Supp. 1196, 1200 (N.D. Cal. 1998) ("Defendants contention that attorney fees are likely to total at least $20,000 is too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence.").

Other courts use a reasonable estimate of future attorneys' fees to calculate the amount in controversy. *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Other courts, including the Tenth Circuit have held that a reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. . . . Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by plaintiff and thus contributes to the amount in controversy."); *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing amount in controversy. . . . Such fees necessarily accrue until the action is resolved. Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal. . . . [T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred."); *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB-AJWX, 2015 WL 898468, at *5-6 (C.D. Cal. Mar. 3, 2015) ("The Court believes that, when authorized by an underlying statute, the better view is to consider post-removal attorneys' fees because they are part of the total 'amount at stake.'") (citations omitted); *Chambers v. Penske Truck Leasing Corp.*, No. 1:11-CV-00381 LJO, 2011 WL 1459155, at *4 (E.D. Cal. Apr. 15, 2011) ("'The

court determines the amount in controversy based on the damages that can reasonable be anticipated at the time of removal. Similarly, the measure of fees should be that amount that can reasonably be anticipated at the time of removal . . . .'") (quoting *Simmons*, 209 F. Supp. 2d at 1034-35).

Using either a calculation of future attorneys' fees or a calculation of attorneys' fees prior to removal, when a reasonable estimate of attorneys' fees is added to the amount in controversy Defendant has calculated for Plaintiff's first, second, third, and fifth causes of action, the jurisdictional minimum is clearly satisfied. Defendant estimates that the amount in controversy for Plaintiff's claim for one hour of unpaid overtime per week is $1,870,157, the amount in controversy for a claim of one meal or one rest period violation per week is $1,246,445, and the amount in controversy for Plaintiff's waiting time claim is $2,593,406. Defendant calculates that the total amount in controversy for Plaintiff's first, second, third, and fifth causes of action is $5,502,142.[2]

Defendant has shown by a preponderance of the evidence that the estimated amount in controversy exceeds the jurisdictional minimum of $5 million. Plaintiff's motion to remand is denied.

**IV. Motion to Strike**

The Answer filed by Defendant asserts the following defenses: (1) failure to state a cause of action, (2) Plaintiff's claims are barred by the applicable statutes of limitations; (3) failure to exhaust internal and administrative remedies and/or failed to satisfy California Labor Code pre-filing requirements; (4) lack of standing; (5) failure to mitigate; (6) Plaintiff's causes of action are not appropriate for treatment as a class or representative action; (7) certain claims are not entitled to a jury trial; (8) claims are barred because class or representative action is not a superior method for adjudicating

---

[2] Defendant does not calculate the damages Plaintiff seeks for unpaid minimum wages, the reimbursement of business expenditures under California Labor Code §§ 2800 and 2802, and for failure to provide accurate wage statements under California Labor Code § 226(a) but alleges that these claims further increase the amount of damages Plaintiff seeks in this action.

the dispute; (9) claims are barred by the *de minimis* doctrine; (10) claims are barred to the extent that some hours claimed by Plaintiff and putative class are not "hours worked" within the meaning of any California Law; (11) laches; (12) injunctive relief and restitution remedies are barred because Plaintiff and putative class members have an adequate remedy at law; (13) claims have been waived, released, discharged, and/or abandoned; (14) unclean hands; (15) Defendant is entitled to setoff and recoupment to offset all overpayments and/or all obligations of Plaintiff or putative class members owed to any Defendant against any judgment entered against Defendant; (16) claims alleging violation of California Business and Professions Code §§ 17200 et seq. and Labor Code §§ 2698 et seq. are barred because the statutes violate the due process and/or equal protection clauses of the Fifth and Fourteenth Amendments and Articles I and IV of the California Constitution; (17) PAGA claims are unconstitutional because they violate the separation of powers doctrine; (18) Plaintiff failed to allege that Defendant acted willfully and failed to allege a good faith dispute; (19) penalties are unjust, arbitrary and oppressive, or confiscatory; (20) the Complaint fails to state a claim for waiting time penalties; (21) an award of penalties against Defendant would constitute an excessive fine; and (22) lack of standing for injunctive relief.  (ECF No. 2).

Plaintiff moves to strike "Defendant's first, second, fourth, fifth, eighth, eleventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth, eighteenth and twenty-first purported 'separate and affirmative defenses' . . . on the grounds that they are not pled with sufficient particularity, and thus, do not give Plaintiff fair notice of the defenses raised."  (ECF No. 6-1 at 5).  Plaintiff "moves to strike Defendant's purported first, eighth, sixteenth, seventeenth, and twenty-first affirmative defenses because they are immaterial to this action as they do not constitute affirmative defenses."  *Id.*

Defendant contends that a heightened pleading standard does not apply to affirmative defenses.  Defendant contends that where discovery has not yet begun, it would be improper to strike defenses for having no bearing on the subject matter of the

litigation.  Defendant contends that its reservation of its right to amend and request for costs and attorneys' fees should not be stricken because Plaintiff fails to show prejudice.  Defendant requests that it be allowed to amend its answer if the Court grants any portion of the Plaintiff's motion to strike.

A motion to strike an affirmative defense is allowable under Federal Rule of Civil Procedure 12(f), which provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010).  "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense." *Nguyen v. HOVG, LLC*, No. 14cv837, 2014 WL 5361935, at *1 (S.D. Cal. Oct. 20, 2014) (quoting *Roe v. City of San Diego*, 289 F.R.D. 604, 608 (S.D. Cal. 2013).  "It does not, however, require a detailed statement of facts." *Id.*

Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (*citing Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).  "[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike, and "[u]ltimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (*citing Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)).  In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Cal. Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033.  "Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions

of law on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).       Additionally, "district courts within this circuit" have held that "[d]enials that are improperly pled as defenses should not be stricken on that basis alone." *Weddle v. Bayer AG Corp.*, No. 11CV817 JLS, 2012 WL 1019824, at *4 (S.D. Cal. Mar. 26, 2012) (citing *J & J Sports Prods. v. Delgado*, No. 10-2517, 2011 U.S. Dist. LEXIS 9013, at *5 (E.D. Cal. Jan. 19, 2011); *Mattox v. Watson*, No. 07-5006, 2007 WL 4200213 (C.D. Cal. Nov. 15, 2007); *Smith v. Wal-Mart Stores*, No. 06-2069, 2006 WL 2711468 (N.D. Cal. Sept. 20, 2006)).

Defendant withdraws its Seventeenth Defense, therefore the Court strikes the Seventeenth Defense from the Answer. *See* ECF No. 9 at 13 n. 1.

As to Defendant's reservation of rights "to assert such additional defenses that may appear and prove applicable during the course of this litigation," this reservation of rights is improper to the extent that it relieves Defendant from its future obligations to comply with the Federal Rules of Civil Procedure in amending pleadings and asserting new affirmative defenses.  Otherwise, the reservation of rights is superfluous and "immaterial." *See* Fed. R. Civ. P. 12(f).  The reservation of the right to assert additional defenses is stricken.

After review of the pleadings and the submissions of the parties, the Court finds that each of the remaining affirmative defenses in the answer provide sufficient notice of the defense to Plaintiff at this time.[3]  Plaintiff's motion to strike affirmative defenses is premature before discovery has commenced. *See Vistan Corp. v. Fadei USA, Inc.*, No. C-10-4862 JCS, 2011 WL 1544796, at * 7 (N.D. Cal. Apr. 25, 2011) ("These affirmative defenses, while boilerplate, are standard affirmative defenses, appropriate at the outset of the case before discovery has commenced.").  Any lack of factual detail in these defenses may be remedied through the formal discovery process. *See Diaz v.*

---

[3] With respect to the First Affirmative Defense, failure to state a cause of action, Federal Rule of Civil Procedure 12(h)(2) permits the defense of failure to state a claim to be raised in an answer. *See J & J Sports Productions, Inc.*, 2011 WL 2132723, at *2 n. 1.

1  *Alternative Recovery Management*, No. 12cv1742, 2013 WL 1942198, at *2 (S.D. Cal.

2  May 8, 2013).

3      Plaintiff's motion to strike portions of Defendant's answer is granted as to

4  Defendant's Seventeenth Defense and the reservation of the right to assert additional

5  defense and is otherwise denied.

6  **V.  Conclusion**

7      IT IS HEREBY ORDERED that the motion to remand (ECF No. 7) filed by

8  Plaintiff is denied.

9      IT IS FURTHER ORDERED that the motion to strike portions of Defendant's

10  answer (ECF No. 6) filed by Plaintiff is granted as to the seventeenth defense and the

11  reservation of the right to assert additional defenses, and is otherwise denied.

12  DATED:  April 21, 2016

13  _William Q. Hayes_
    **WILLIAM Q. HAYES**

14  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28